Sturgis and others, Plaintiffs and Respondents, v. Margetts and others, Appellants: Walworth County, Defendant and Respondent.

*No. 285. Argued June 5, 1970.—Decided June 26, 1970.*
(Also reported in 177 N. W. 2d 609.)

734

For the appellants there was a brief by *Jack J. Gimbel* and *Seymour Gimbel*, both of Milwaukee, and oral argument by *Seymour Gimbel.*

For the plaintiffs-respondents there was a brief by *Godfrey, Godfrey & Neshek* and *Milton E. Neshek*, all of Elkhorn, and oral argument by *Milton E. Neshek.*

For the defendant-respondent there was a brief and oral argument by *William L. Seymour*, corporation counsel.

ROBERT W. HANSEN, J.  No issue was raised before the trial court, nor in the briefs on appeal, as to the applicability of the declaratory relief statute to the situation here involved.  So this contention, advanced during oral arguments before this court, is held to have been belatedly raised and is not passed upon.[1]

---

[1] *Gebhardt Bros., Inc., v. Brimmel* (1966), 31 Wis. 2d 581, 583, 143 N. W. 2d 479. *See also: State v. Conway* (1967), 34 Wis. 2d 76, 83, 148 N. W. 2d 721; *McDonald v. Chicago, M., St. P. & P. R. R.* (1968), 38 Wis. 2d 526, 534, 157 N. W. 2d 553; *Spitz v. Continental Casualty Co.* (1968), 40 Wis. 2d 439, 447, 162 N. W. 2d 1.

The basic issue to be here resolved is whether the defendants are operating a mobile home park. They have obtained written permission of the board of adjustment to use the land as a recreational camp and as a camping area. They have neither applied for nor received written permission from the board to use the land as a mobile home park.

The relevant definitions in the county zoning ordinance provide:

"**Mobile Home Park.** An area or premises on which is provided the required space for the accommodation of trailers, together with the necessary accessory buildings, driveways, walks, screening and other required adjuncts." [2]

"**Recreational Camp.** An area containing one or more permanent buildings used occasionally or periodically for the accommodation of members of associations or groups for recreational purposes." [3]

"Camping areas, for the temporary accommodation only of persons providing their own means of shelter . . . ." [4]

What factors should one consider in determining whether a particular operation constitutes a camp, a camping area or a mobile home park? What would one look for in distinguishing a mobile home park from a camp or camping area? Here the nature of the use might be distracting, but it is clear that the distinction rests upon something more than the presence of mobile homes or trailers. As the trial court carefully pointed out, there are mobile home units, capable of use as permanent residences, that can be and are towed behind automobiles for brief stays at camps or camping areas. As the trial court concluded, it is the predominant use

---

[2] Walworth County Amended Zoning Ordinance of 1962, sec. 1, page 4.

[3] *Ibid.*

[4] *Id.* sec. IV (3), page 10.

of the premises, the facilities available on the site and the type and permanency of installations of the mobile home units present that must be considered. The trial court concluded that the use of the land by the defendants constituted the operation of a mobile home park. Such finding of fact is not to be upset on appeal unless it is against the great weight and clear preponderance of the evidence.[5]

The trial judge carefully detailed and set forth in his opinion the type of mobile home, the nature of its installation, and the duration of its placement on the premises, as to each mobile home and trailer on the property of defendants. It is not necessary to include in this opinion each and all of these individual evaluations. Three, excerpted from the trial judge's opinion, will do to demonstrate that there is ample basis in the record to support the conclusion reached that the defendants were operating a mobile home park:

"Unit 9 was a thirty foot four-wheel unit with electrical and water connections. It also contained a utility building in the back and had a tile field and sewer connection. There were plantings in front of this unit and it was off the ground and contained a 1965 Wisconsin license plate. This unit was not moved for over a year and had been on the premises since it was placed there.

"Unit 23 was a fifty-five foot Duke unit. It had a septic tank and sanitary sewer and tile field connections. There were water connections and electrical connections. It was up on blocks and had no Wisconsin license plates. It had been there between two and three years and was permanently occupied by a family.

"Unit 24 was a Marshfield sixty-five foot unit containing a tile field and septic tank with permanent con-

---

[5] *Mitchell v. Western Casualty & Surety Co.* (1966), 30 Wis. 2d 419, 421, 141 N. W. 2d 212; *Novak v. Agenda* (1969), 44 Wis. 2d 644, 647, 648, 172 N. W. 2d 38; *First Credit Corp. v. Behrend* (1969), 45 Wis. 2d 243, 246, 172 N. W. 2d 668; *Strozewski v. American Family Mut. Ins. Co.* (1970), 46 Wis. 2d 123, 127, 128, 174 N. W. 2d 550.

nections for water and electricity. This unit also contained a fence in front and was on blocks with side curtains. It was permanently occupied for approximately one year."

The listing is a sampling, not complete by any means. Additionally, there was testimony that defendants paid a school tax on the mobile homesites. For our purpose, it is enough to state that the record provides a firm underpinning for the finding of the trial court that defendants were operating a mobile home park.

Defendants claim trial court error in excluding testimony as to the opinion of two local officials concerning whether defendants were violating the zoning ordinance. However, the trial court went beyond local official opinions to acknowledge that the action of the board of adjustment, in granting the camp and camping area permission, constituted a conclusion that the defendants were operating a camp, not a mobile home park. As the court decision stated, such action is to be given weight, but is not binding upon the court.

Finally, defendants claim that a nudist camp is to be considered a farm, and, their camp or colony being in an area zoned for agricultural use, no other permit for the present use is needed. We see no analogy between running a nudist facility and operating a dairy or crop farm, and, even if we are myopic in that regard, the zoning ordinance involved provides that "there may be . . . not more than two trailers or mobile homes in connection with the operation of any farm, . . ." [6] More mobile homes can be placed on a farm only with the permission of the board of adjustment, and the record here shows no evidence of such permission. Donning overalls as farmers would get the defendants under one barbed wire fence, but they'd be hung up on another. Either as

[6] Walworth County Amended Zoning Ordinance of 1962, sec. VI (1), page 13.

farmers with more than two mobile homes on the farm, or as proprietors of a mobile home park, they need the written permission of the board of adjustment. This, as of now, they do not have.

*By the Court.*—Judgment affirmed.